**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrea Hultman,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-20-01936-PHX-JJT<br><br>**ORDER** |

Plaintiff challenges the denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff filed a Complaint with this Court seeking judicial review of that denial (Doc. 1), and the Court now addresses Plaintiff's Opening Brief (Doc. 20, Pl. Br.), Defendant's Answering Brief (Doc. 26, Def. Br.), and Plaintiff's Reply (Doc. 27, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 11, AR.) and now reverses the Administrative Law Judge's ("ALJ") decision. The Court remands for additional proceedings consistent with this opinion.

**I.     PROCEDURAL HISTORY**

In July 2017, Plaintiff filed an application for disability insurance benefits alleging disability beginning February 25, 2017. (AR. at 177.) The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review (AR. at 100-103, 105-108), and Plaintiff timely requested a hearing

before an ALJ. (AR. at 109.) ALJ John Gaffney conducted a hearing on October 1, 2019. (AR. at 40-62.) At that hearing, Plaintiff and vocational expert ("VE") Susan Green testified. On December 5, 2019, ALJ Gaffney issued an unfavorable decision. (AR. at 20-33.) On August 11, 2020, the Appeals Council denied review. (AR. at 1-3.) Plaintiff then filed an action in this Court. (Doc. 1.)

**II.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the analysis proceeds to step four, where the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id.* If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant cannot, she is disabled. *Id.*

This Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining

whether substantial evidence supports a decision, the court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.   THE ALJ DECISION**

In the denial, the ALJ concluded Plaintiff had not engaged in disqualifying substantial, gainful work activity during the relevant period. (AR. at 22-23.) The ALJ further concluded that Plaintiff suffered from severe impairments including seizure disorder, affective disorder, and anxiety disorder, but that the evidence of these impairments was insufficient to meet or medically equal the requirements of a listing at step three. (AR. at 23-24.) In the RFC determination, the ALJ found Plaintiff had no exertional limitations, but that she must avoid climbing ladders, ropes, or scaffolds and working around machinery and unprotected heights. (AR. at 25.) The ALJ found Plaintiff limited to only occasional work around irritants and the public, and simple, routine, and repetitive tasks. (AR. at 25.) The ALJ concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."[1] (AR. at 26.) The ALJ deemed the opinions of psychological consultative examiner Kari Coelho, Psy.D. and the non-examining psychological consultants at the initial level to be unpersuasive. (AR. at 30.) The ALJ found the non-examining consultants opining as to Plaintiff's physical restrictions, and the psychological consultant at the reconsideration level, to be persuasive. (AR. at 31.) The ALJ found that while Plaintiff could not perform her own past relevant work, she could perform work existing in significant numbers in the national economy. (AR. at 32-33.) The ALJ concluded Plaintiff was not disabled. (AR. at 33.)

---

[1] The ALJ provided several reasons in support. (AR. at 26-30.)

## IV. DISCUSSION

Plaintiff presents five issues on appeal: (1) whether the ALJ provided legally sufficient reasons for rejecting Dr. Coelho's opinion; (2) whether the ALJ erred by finding Plaintiff could perform jobs that are precluded by her RFC; (3) whether the ALJ erred by concluding Plaintiff's impairments did not meet a listing; (4) whether the ALJ erred by providing insufficient reasons for rejecting Plaintiff's symptom testimony; and (5) in the event of remand, whether the Court should remand for payment of benefits or a new hearing. (Pl. Br. at. 1.)

### a. The ALJ provided reasons supported by substantial evidence for rejecting the consultative examiner's report.

Under new regulations applicable to claims filed on or after March 27, 2017, an ALJ should not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). The ALJ must instead evaluate each opinion's overall persuasiveness and articulate his conclusion utilizing two key factors: "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). The ALJ is not required to explain how he considered other factors—such as the nature of the relationship with the claimant, the frequency of examinations, or the doctor's specialization—unless the ALJ concludes that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical. *See* 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit recently addressed the effect of these new regulations on well-established circuit precedent recognizing a hierarchy of medical opinions and affording deference to the opinions of examining or treating physicians. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). In *Woods*, the Ninth Circuit held that the revised regulations "are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Id*. at 792. The Ninth Circuit held its requirement that ALJs provide "specific and legitimate reasons" for rejecting the controverted opinion of a treating or examining doctor is

incompatible with the revised regulations. *Id*. Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id*. This means that the ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source . . . and 'explain how [he] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In November 2017, consultative psychologist Kari Coelho, Psy.D. interviewed and examined Plaintiff at the behest of Arizona's Disability Determination Services. (AR. at 529-34.) Dr. Coelho observed Plaintiff presented as anxious, occasionally tearful, and with tremulous hands. (AR. at 529.) She noted "slow, logical, and coherent" thought processes, but difficulties with Plaintiff's attention and concentration as exhibited on the Folstein mini-mental status examination. (AR. at 531.) Dr. Coelho diagnosed Plaintiff with Generalized Anxiety and Major Depressive disorders. (AR. at 531-32.) She characterized Plaintiff's prognosis as "guarded," and explained, "She does appear to be suffering from depression and anxiety at this time, which has been exacerbated due to her uncontrolled seizures." (AR. at 532.) Noting Plaintiff's low energy and motivation, seizures, daytime sleepiness, and inability to provide transportation for herself, Dr. Coelho opined Plaintiff "would struggle to maintain regular attendance at a job." (AR. at 533.) Dr. Coelho opined Plaintiff would likely "struggle to respond appropriately to supervision" due to her seizure disorder and attention and concentration deficits. (AR. at 533.) Dr. Coelho also noted Plaintiff's limited coping skills, and observed, "She appears to be very overwhelmed with her situation and her ongoing seizures." (AR. at 533.)

In the unfavorable decision, the ALJ found Dr. Coelho's report unpersuasive. (AR. at 30.) The ALJ asserted Dr. Coelho "seemed to rely heavily on [Plaintiff's] subjective reports and did not have the benefit of reviewing the entire record." (AR. at 30.) The ALJ noted Plaintiff had not taken a prescribed antidepressant, that she had been referred to but had not followed up with a psychiatrist, and that she had no formal mental health treatment at any time during the relevant period. (AR. at 30.) The ALJ asserted what mental status

findings existed elsewhere in the record tended to show Plaintiff as alert, oriented, cooperative, in no distress, with intact memory, clear speech, and normal mood and affect. (AR. at 30.) The ALJ also believed Plaintiff's reported daily activities belied the limitations Dr. Coelho assigned. (AR. at 31.) The Court addresses each reason in turn.

### i. Dr. Coelho's reliance on subjective symptoms.

That Dr. Coelho mostly relied upon the Plaintiff's subjective report is not supported by substantial evidence. Dr. Coelho's opinion is supported by her own personal observations, including Plaintiff's presentation as depressed, anxious, and tearful with tremulous hands, and her attention and concentration difficulties which manifested during the exam. (AR. at 531.) While it is evident Dr. Coelho did rely upon Plaintiff's report to some extent, it is not evident she relied upon Plaintiff's reports over her own observations and clinical impressions. *E.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."); *Monan v. Astrue*, No. 2:08-CV-0223-HRH, 2009 WL 10695548, at *4 (D. Ariz. Mar. 12, 2009), *aff'd*, 377 F. App'x 629 (9th Cir. 2010). Consequently, this reason is not supported.

### ii. Dr. Coelho's reliance upon limited medical records.

That Dr. Coelho relied upon limited medical records is also an insufficient reason. The ALJ deemed the opinions of several other non-examining consultants to be persuasive even though they too had limited medical records to review. (AR. at 31, 72-74, 88-92.) Further, Dr. Coelho indicated her knowledge of Plaintiff's medical history derived, in part, from a "record review," although she failed to disclose which records. (AR. at 529.) There is insufficient evidence to support the conclusion Dr. Coelho reviewed significantly fewer records than opinions from other physicians the ALJ deemed persuasive. Consequently, this reason is not supported.

### iii. Plaintiff's failure to seek mental health treatment

Regarding Plaintiff's alleged failure to seek mental health treatment, the Ninth Circuit—when recognizing the hierarchy of medical opinions and granting deference to treating and examining opinions—"particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (finding error in rejecting doctor's opinion based on lack of treatment) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). Notably, however, a claimant suffering from mental health impairments was not excused in every case for an utter failure to seek psychiatric or psychological treatment. *See, e.g.*, *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (a claimant's "*unexplained,* or *inadequately explained,* failure to seek treatment or follow a prescribed course of treatment" is a clear, convincing reason for rejecting his symptom testimony) (emphasis added); *Rolston v. Colvin*, No. CV-14-08040-PCT-BSB, 2015 WL 685162, at *13 (D. Ariz. Feb. 18, 2015) (noting Plaintiff's failure to follow referrals for specialist mental health treatment was a clear, convincing reason for discounting her symptom testimony).

Here, Plaintiff received medication for mental health treatment but repeatedly failed to follow-up on specialist referrals or take other medications when her mental complaints did not improve. Plaintiff was taking Lamotrigine, in part, for her mood disorder, but Dr. Lehnhoff repeatedly noted it had not significantly improved Plaintiff's mood. (AR. at 306, 586, 619.) Dr. Lehnhoff also prescribed Effexor to help with Plaintiff's mood and her headaches, but Plaintiff never started taking it. (AR. at 619-20.) From the beginning of the relevant period, Dr. Lehnhoff repeatedly referred Plaintiff to a psychiatrist for mental health treatment, but Plaintiff never sought any specialized help.[2] (AR. at 619-20.) These reasons are established in the record and supported by substantial evidence.

---

[2] Plaintiff testified at her hearing that her insurance lapsed, but according to Plaintiff, this did not occur until approximately one month prior to her hearing. (AR. at 56.)

- 7 -

### iv.     Plaintiff's normal mental status findings

The ALJ also noted Plaintiff exhibited no alarming clinical signs whenever her mental status was documented, noting that she presented in no distress with clear speech and intact memory, and that she was alert, oriented, and cooperative. (AR. at 30.) A review of the record shows this to be a rational interpretation of the record. Plaintiff presented as oriented with normal mood and affect and fluent speech in February 2017 (AR. at 305); oriented with intact memory and clear speech but a "somewhat flat" affect in May and June 2017 (AR. at 369, 382-83); oriented with normal speech and normal mood but as "somewhat anxious" and distraught in March 2019 (AR. at 584); and oriented with fluent speech and normal mood but a "somewhat depressed" affect in May 2019 (AR. at 618).[3] The Court finds this evidence, while less than compelling, still rises to the level of substantial evidence. This reason is supported in the record.

### v.     Plaintiff's daily activities.

Finally, the ALJ cited Plaintiff's daily activities as a basis to reject Dr. Coelho's findings. This reason is unsupported by substantial evidence. Plaintiff reported activities to Dr. Coelho that did not significantly deviate from her other reports,[4] and Plaintiff's reports of limited functionality do not appear to undermine Dr. Coelho's findings. Plaintiff was substantially consistent in her description of her limited daily activities and the ALJ's description of these activities does not adequately account for the difficulties Plaintiff reported having. For instance, the ALJ asserted Plaintiff was able to prepare her children for school with assistance, attend to personal hygiene, prepare simple meals, take her medications, visit with family, and go to the gas station regularly. (AR. at 31.) In her function report, however, Plaintiff stated she needed daily reminders to take medications

---

[3] The ALJ cited these exams, along with a few duplicates. (AR. at 30.)

[4] Plaintiff told Dr. Coelho she avoided going to the store, needed assistance with managing her finances, did not drive, that she changed clothes and showered only two-to-three times per week, that she had a limited ability to engage in household chores, that she had no social activities, and that she had short-term memory difficulties. (AR. at 530-31.) In her August 2017 function report, Plaintiff reported difficulties completing household tasks, preparing meals, and managing her finances, and needing reminders to bathe and take medicine. (AR. at 210.) This account is also consistent with Plaintiff's symptom testimony. (AR. at 54-56.)

and to bathe, that she struggled making even simple meals, that she could not go out alone, and that her daily hobbies and social activities consisted only of watching television with her family. (AR. at 210-14.)

Overall, however, because the ALJ provided other sufficient reasons addressing the supportability and consistency of Dr. Coelho's opinion, and these reasons are supported by substantial evidence, any other errors with respect to Dr. Coelho's report are harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (noting harmless error is inconsequential to the ultimate non-disability determination). Consequently, the Court affirms the ALJ's decision with respect to Dr. Coelho's opinion.

### b. The ALJ did not explain his refusal to adopt a limitation to one-to-two step instructions which could preclude the jobs he identified at step five.[5]

The ALJ concluded the opinion of non-examining state psychological consultant Eric Penner, Ph.D. was persuasive, "consistent with the objective medical evidence[,]" and "supported by [Plaintiff's] lack of aggressive treatment[,]" noncompliance, her normal mental status examination findings, and her daily activities. (AR. at 31-32.) As Plaintiff observes, however, Dr. Penner limited Plaintiff to one-to-two step tasks (AR. at 90-91), and this limitation (which was not incorporated into Plaintiff's RFC) would apparently preclude Plaintiff from performing the jobs the ALJ identified at step five. (AR. at 33.) A limitation to one-to-two step tasks presumably eliminates jobs requiring GED level 2 reasoning, which would create a conflict in the vocational evidence requiring a resolution.[6] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015).

---

[5] Defendant suggests this argument is waived because Plaintiff failed to argue it under a separate heading in her Opening Brief. (Def. Br. at 15.) Importantly, however, Plaintiff did identify the issue amongst the "Issues Presented" on the first page of her Opening Brief (Pl. Br. at 1) and substantively expounded upon it later in the brief (Pl. Br. at 11). That Defendant felt compelled to address it is evidence enough that Defendant had notice. (Def. Br. at 14-16.) Consequently, the Court finds the issue is not waived.

[6] For the vocational requirements of each job, see Dictionary of Occupational Titles ("DOT"), 1991 WL 687916, "Hand Packager," 920.587-018; DOT, 1991 WL 672987, "Laundry Worker II," 361.685-018; and DOT, 1991 WL 673258, "Cleaner, Industrial," 381.687-018.

Defendant does not contest the apparent conflict with the DOT, but instead argues the ALJ implicitly rejected this specific limitation and formulated hypotheticals to the VE that include only those limitations supported by the record. (Def. Br. at 14-16.) Contrary to Defendant's view, the ALJ appeared to accept Dr. Penner's limitation to one-to-two step tasks.[7] If the ALJ intended to reject this limitation, he provided no reasoning to support that decision. (AR. at 31-32.) Although an ALJ is not required to assess every piece of evidence presented, he must give reasons for rejecting "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). The Court finds no reason for this not to be true under the new regulations as well. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."); *e.g.*, *Woods*, 32 F.4th at 792. The Court finds the ALJ had a duty to explain why he was not adopting this specific limitation. This aspect of Dr. Penner's opinion is significant because it potentially belies the ALJ's conclusions at step five.[8] Consequently, a remand for additional proceedings is warranted.

       **c.**      **The ALJ did not err by concluding Plaintiff's impairments did not meet a listing.**

To meet a listing at step three, a claimant must meet all the medical criteria of the listing. 20 C.F.R. § 404.1520(d). An ALJ must "resolve ambiguities" in the evidence at this stage, *see Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), and his

---

[7] The ALJ stated, "The undersigned finds the opinion of the State agency psychological consultants persuasive. They opined that the claimant could perform one to two step tasks on a consistent, productive basis . . . . The residual functional capacity assessed by the State agency medical consultants is reasonable and consistent with the objective medical evidence." (AR. at 31.) The Defendant argues the ALJ intended to reject this limitation when he explained, "Despite this, it was also repeatedly noted the claimant was mostly in no distress . . . ." (AR. at 31.) The ALJ's explanation appears to address Plaintiff's lack of treatment and mental health follow-up, *i.e.*, that despite her lack of treatment, Plaintiff exhibited no troubling clinical signs upon examination. (AR. at 31.)

[8] Defendant cites to Social Security Ruling 96-8p for the proposition that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Titles II & XVI: *Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). This appears to belie Defendant's position as the ALJ did not provide any direct explanation why he did not adopt this specific limitation to one-to-two step instructions. (AR. at 31-32.)

- 10 -

determination is entitled to deference if it is supported by substantial evidence. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). Importantly, it is the claimant's burden of proof that she is disabled per se under a listing. *Tackett*, 180 F.3d at 1098. Alternatively, to establish medical equivalence to a listed impairment, "a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment most like the claimant's impairment." *Id*. (quoting 20 C.F.R. § 404.1526(a)). Although it is the claimant's burden to prove disability at step three, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Plaintiff argues her condition meets the evidentiary requirements of listing 11.02(A), (B), and (C). She notes that during her May 2019 treatment visit with Dr. Lehnhoff she reported, despite her earlier accounts of rare tonic-clonic seizures, that her seizures now occurred "usually about once per month," including recent consecutive episodes from the same day. (AR. at 612.) Plaintiff argues her treatment notes with her specialist providers provide evidence sufficient to meet the requirements of 11.02(B) for dyscognitive seizures, and that her reports of routine tonic-clonic seizures, combined with the mental limitations Dr. Coelho described, are sufficient to meet the requirements of 11.02(C). (Pl. Br. at 12.)

Plaintiff did not make a statement at the hearing or submit a pre-hearing brief drawing the ALJ's attention to any particular subsection of Listing 11.02, and thus did little to meet her burden. *See, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) ("The district court correctly explained that Burch 'bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations.'"); *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.")

Nevertheless, the ALJ still evaluated Plaintiff's evidence under the appropriate listing heading—11.02 for "[e]pilepsy[] documented by a detailed description of a typical seizure . . . ."[9] (AR at. 23-24.) The ALJ noted there was no evidence to support three consecutive months of tonic-clonic seizures despite adherence to treatment, which applies to section 11.02(A), but he did not cite specific factual findings applicable to other subsections of the listing. (AR. at 23.) An ALJ need not make specific findings as to every subsection of the listings if he otherwise provides sufficient "foundations on which the ultimate factual conclusions are based."[10] *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir.1981)). An extensive discussion and summarization of the evidence in the record is an adequate factual foundation. *Gonzalez*, 914 F.2d at 1201. Here, the ALJ provided a lengthy discussion of his evaluation of the evidence later in the decision. (AR. at 26-32.) He noted Plaintiff's earlier reports of sporadic and infrequent seizures (AR. at 26), and her failure to take prescribed medications or take medications as prescribed. (AR. at 26, 28-29.) Moreover, even assuming Plaintiff's subjective report, standing alone, was sufficient to prove a disability under this listing, Plaintiff's report she experiences seizures "usually about once per month" (AR. at. 612) still does not definitively establish three consecutive months of general tonic-clonic seizures with adherence to treatment.

Regarding 11.02(B), which requires a showing of weekly dyscognitive seizures for three consecutive months despite adherence to prescribed treatment, while Plaintiff did report seizure-like activity similar to dyscognitive seizures,[11] Plaintiff did not make the showing these episodes occurred once per week for three consecutive months in the relevant period. Dr. Lehnhoff documented that "patient's husband thinks that sometimes

---

[9] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 11.02.

[10] Here, the factual conclusion at issue is that Plaintiff's condition does not meet or medically equal the requirements of listing 11.02, including any subsection of 11.02. The ALJ stated he had "considered [Plaintiff's] seizures under section 11.02 of the Listings[,]" (AR. at 23) meaning he had considered Plaintiff's eligibility under 11.02 as a whole, although he did not make specific findings at step three pertaining to subsections (B), (C), or (D).

[11] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 11.00(H)(1)(b).

she has spells where she 'blanks out' during conversations, and asks people to repeat things." (AR. at 303.) Dr. Lehnhoff also noted Plaintiff's husband described episodes where Plaintiff cannot remember entire days despite her being awake and active, but there was no indication as to how often this occurs. (AR. at 303.) When asked to describe how often she experiences "blank out" seizures at her hearing, Plaintiff testified they are "random and grand." (AR. at 49.) This is insufficient to establish the frequency criterion.

Moreover, the ALJ's larger examination of the record provided a factual basis for his conclusion Plaintiff's conditions do not meet the other subsections of 11.02 due to her failure to adhere to prescribed treatment. *Gonzalez*, 914 F.2d at 1201. The ALJ, for instance, noted Plaintiff repeatedly failed to follow treatment recommendations, including not taking medications that were prescribed,[12] not taking medications *as* prescribed,[13] failing to follow-up with specialized mental health providers, and failing to attend diagnostic testing ordered by her treating specialist.[14] For these same reasons, Plaintiff's seizures do not meet the requirements of Listing 11.02(C)(2), (3), and (4), which all require adherence to prescribed treatment.[15] Consequently, the ALJ did not err by failing to explicitly consider each of these listing subsections.

---

[12] The ALJ stated, "The claimant reported she had daily migraine headaches. Yet she admitted she had not started Rizatriptan since it had been prescribed at her last visit." (AR. at 28.) The ALJ also noted, "Dr. Lehnhoff stated she had also prescribed the claimant Effexor for her headaches, which would also help with her symptoms of depression and anxiety. However, the claimant admitted she never started taking it." (AR. at 29.)

[13] The ALJ explained, "[T]he claimant admitted she had not used clonazepam after her seizures and instead she was taking 1 milligram of Topamax for her myoclonic jerks and insomnia. Dr. Lehnhoff indicated this medication was to be used as needed, but she took it every night." (AR. at 28.)

[14] The ALJ noted, "Dr. Lehnhoff noted she had ordered a 72 hour ambulatory EEG to evaluate ]Plaintiff's] night-time jerks, but [Plaintiff] stated that she never went to this appointment." (AR. at 28.)

[15] Under the listing, "adherence to prescribed treatment means that [the claimant has] taken medication(s) or followed other treatment procedures for [her] neurological disorder(s) as prescribed by a physician for three consecutive months but [her] impairment continues to meet the other listing requirements despite this treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 11.00(C) (quotation marks omitted). The ALJ's analysis shows Plaintiff did not take medications that were prescribed, or that she failed to take medications as prescribed. (AR. at 27-29.)

### d. The ALJ did not err by rejecting Plaintiff's symptom testimony.

An ALJ performs a two–step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

Plaintiff argues the ALJ did not explain "how the medical evidence is contrary to her symptom testimony[,]" and that an ALJ may not reject a claimant's symptom testimony by citing a lack of objective evidence alone. (Pl. Br. at 13-14.) Plaintiff argues the ALJ's reasoning Plaintiff was noncompliant with treatment is inconsistent with his finding at step three that Plaintiff could "follow instructions from healthcare providers, [and] comply with treatment outside of a doctor's office . . . ." (Pl. Br. at 14, AR. at 24.)

The ALJ cited several reasons for rejecting Plaintiff's symptom testimony, including Plaintiff's inconsistent reports regarding the frequency of her seizures, her failure to attend diagnostic testing or follow-up with specialists, her non-compliance with her medication regimen, and her failure to seek more frequent treatment with her specialist, Dr. Lehnhoff. (AR. at 29.) But Plaintiff's only argument regarding the ALJ's consideration of her symptom testimony is that the conclusion Plaintiff was noncompliant is inconsistent with the ALJ's prior finding Plaintiff had only a mild limitation in the area of understanding, remembering, and applying information at step three. (AR. at 24.)

The Court sees no inconsistency. The ALJ's conclusion at step three merely pertained to Plaintiff's mental capacity to engage with healthcare providers and follow their instructions. (AR. at 24.) Plaintiff's failure to follow prescribed treatment, seek specialist

- 14 -

treatment, or schedule recommended diagnostic testing—despite having the mental capacity to do so—is what the ALJ concluded belied Plaintiff's symptom testimony. (AR. at 29.) Consequently, the ALJ provided clear, convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

### e. The Court will remand for additional proceedings.

The Court in its discretion will remand for additional proceedings. Additional proceedings will serve the useful purpose of presenting an opportunity to resolve the vocational conflict which is the basis of this remand. In a credit-as-true analysis, further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (citations omitted). Such is the case here.

**IT IS THEREFORE ORDERED** reversing the December 5, 2019 decision of the Commissioner of Social Security (AR. at 20-33) and remanding for further proceedings consistent with this opinion.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

Dated this 7th day of June, 2022.

Honorable John J. Tuchi
United States District Judge